**Joseph F. HUTCHISON, et al.,
Plaintiffs–Appellants,**

v.

**FIFTH THIRD BANCORP,
Defendant–Appellee.**

No. 05–4389.

United States Court of Appeals,
Sixth Circuit.

Argued: Sept. 19, 2006.

Decided and Filed: Nov. 30, 2006.

Rehearing Denied Jan. 4, 2007.

**584**

**ARGUED:** Richard G. Meyer, Deters, Benzinger & Lavelle, Covington, Kentucky, for Appellants. Patrick F. Fischer, Keating, Muething & Klekamp, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Richard G. Meyer, John R. Kirk, Deters, Benzinger & Lavelle, Covington, Kentucky, for Appellants. Patrick F. Fischer, Sue A. Erhart, Keating, Muething & Klekamp, Cincinnati, Ohio, for Appellee.

Before: ROGERS and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.*

_____

\* The Honorable Joseph M. Hood, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

## OPINION

ROGERS, Circuit Judge.

This complicated case involves a merger agreement in which Fifth Third guaranteed that the participants in Suburban Bancorporation's pre-merger employee benefit plan would receive funds from Fifth Third's general assets if certain conditions were met. Joseph H. Hutchison, suing on behalf of a class of former Suburban employees, claims that Fifth Third promised to abide by the terms of the merger agreement, induced class members to vote their shares in favor of the merger, and then breached its contract by refusing to allocate general funds to class members. Fifth Third argues that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, preempts Hutchison's state law breach of contract claim because the claim "relates to" the administration of the ERISA benefit plan, and, in the alternative, that Fifth Third did not breach its contract. The district court properly held that ERISA preempts the breach of contract claim and dismissed the claim. We therefore affirm.

In 1997, Suburban Federal Savings Bank and Fifth Third negotiated a merger "Affiliation Agreement" between the two companies. The Affiliation Agreement contained language covering Suburban's Employee Stock Ownership Plan ("ESOP") because the ESOP held shares of Suburban. *See generally* 26 C.F.R. § 54.4975–7(b)(8)(iv). Hutchison and other members of the proposed class were participants in the ESOP. After reading the representations contained in § V.E.(1) of the Affiliation Agreement, class members voted the ESOP's Suburban shares in favor of the merger. The two companies merged in 1997.

Section V.E.(1) of the Affiliation Agreement began by discussing how class members could obtain funds from the ESOP. The page-and-a-half, single-paragraph section required Suburban to develop a written description and timetable discussing funding, amending, and terminating the ESOP before class members could obtain the plan's funds. Because Suburban and Fifth Third were concerned about the tax implications associated with distributing ESOP funds prematurely, the Affiliation Agreement also required Suburban to obtain from the IRS a determination that the ESOP, as amended, satisfied relevant tai provisions.[1] Class members could not receive any funds until the IRS made such a determination.[2] Finally, the section provided that "[i]n connection with the ...

resolution of the ESOP, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for . the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time," namely the class members.

Section V.E.(1) then included a contingency plan, the meaning of which is in dispute. It stated that, if the parties agreed in good faith that allocating the ESOP's shares would violate certain IRS provisions, Suburban would apply to the IRS for approval allowing ESOP funds to "either revert to Fifth Third or [be] transferred to an employee benefit plan of Fifth Third."[3] The next sentence reads, "If and only if the IRS approves such a Transac-

1. The first two sentences of § V.E.(1) read:
Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth all actions necessary to: (i) make contributions to the Suburban Bancorp, Inc. Employee Stock Ownership Plan ("ESOP") and/or have the ESOP sell unallocated shares under the ESOP to fully repay the ESOP's existing loan, all in compliance with the applicable requirements of ERISA and the Internal Revenue Code, including Code Section 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048) and 404; (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for the allocation of gain on the sale of unallocated shares in a manner that complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination; (iii) terminate the ESOP; and (iv) submit the ESOP to the Internal Revenue Service for a determination letter that the ESOP, as so amended and terminated, continues to be a qualified retirement plan and employee stock ownership plan under Section 401(a) and 4975(e)(7) of the Code. Upon development and approval by Fifth Third of said written description and timetable, Suburban Bancorp shall take such

actions as described therein as are approved by Fifth Third.

2. The third sentence reads:
Distribution of the shares and any other assets of the ESOP shall (i) not occur until after the receipt of the foregoing IRS determination letter and (ii) occur prior to the Effective Time only with the express written consent of Fifth Third, which shall not be unreasonably withheld.

3. The sixth sentence reads:
If, upon development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock held in the ESOP's suspense account would violate the Code's section 415 limitations as interpreted by the IRS in private letter rulings 9648054 and 9426048, Suburban Bancorp shall apply to the IRS for approval (either through an IRS determination letter or other means reasonably acceptable to Fifth Third) of a transaction (the "Transaction") whereby the excess shares (or cash value thereof) (i.e., those shares remaining after fully utilizing the section 415 limits as interpreted by IRS in private rulings 9648054 and 9426048) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third.

tion [for reverting or transferring the funds], or Fifth Third otherwise proceeds with the Transaction without IRS approval," Fifth Third will pay class members "out of its corporate assets and not plan assets" the amount of money in the ESOP at the time of the merger, minus administrative costs.[4]

Suburban began, but did not complete, the steps outlined in Section V.E.(1) to distribute ESOP funds to class members. First, it adopted a Plan Amendment that limited participation in the ESOP to members of the current class. Second, Suburban proposed, and Fifth Third approved, a schedule to accelerate termination of the ESOP. Suburban, however, never obtained the necessary IRS determination letter, and class members, as a result, did not receive ESOP funds.

After the merger, Fifth Third became the successor ESOP sponsor and trustee and took actions to ensure that class members could no longer recover funds from the ESOP. In two separate Plan Amendments, Fifth Third included 1,633 Fifth Third employees in the ESOP and then retroactively excluded class members from the ESOP. In the second Plan Amendment, Fifth Third distributed the ESOP funds to Fifth Third employees, thereby terminating the ESOP. Thus, ESOP funds did not go to class members, whom Fifth Third excluded from the ESOP; instead, the funds went to Fifth Third employees who were not members of the pre-merger Suburban ESOP.

Hutchison brought a civil action in the Ohio Court of Common Pleas on October 29, 2001, raising three types of claims. The first group of state-law claims related to Fifth Third's alleged misrepresentations to class members before they voted in favor of the merger (i.e., claims of breach of contract, intentional misrepresentation, and negligent misrepresentation). The second group of state-law claims related to Fifth Third's alleged taking of class members' assets from the ESOP (i.e., conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing). Finally, Hutchison included an ERISA claim against Fifth Third.

On November 14, 2001, Fifth Third removed the case to the U.S. District Court for the Southern District of Ohio, pursuant to 28 U.S.C. § 1441, because the complaint contained an ERISA claim. Hutchison sought to dismiss the ERISA claim, and moved to remand the case to state court. On August 6, 2002, the district court denied the remand request, finding that ERISA preempted Hutchison's state law claims. The district court then dismissed the state law claims on March 10, 2003, because of ERISA preemption, a decision that it reaffirmed on October 5, 2005. On April 10, 2003, Hutchison filed an amended complaint, alleging only an ERISA violation. On October 7, 2005, the district court dismissed Hutchison's remaining ERISA claim, finding that Fifth Third did

---

4. The parties dispute the interpretation of this provision. Fifth Third refused to pay class members because it interpreted these two sentences as requiring both (1) a good faith determination about tax implications and (2) either IRS approval or "Fifth Third otherwise" proceeding. Because there was no good faith determination about the tax implications and Suburban did not seek a determination letter from the IRS, Fifth Third argues that the necessary precondition for recovery

did not occur. Hutchison, meanwhile, argues that this court should read the "Fifth Third otherwise" clause independently and that class members could recover if (1) the parties have good faith concerns about the tax implications but the IRS approves the plan modifications or (2) Fifth Third otherwise reverts or transfers ESOP funds. Because ERISA preempts Hutchison's claim, we do not reach the merits of this dispute.

not breach any fiduciary duties owed to class members.

In its August 6, 2002, order, the district court held that ERISA preempted Hutchison's claim because Hutchison "sought plan benefits" and "it will be necessary to consult the plan document in order to make an appropriate distribution of any recovery." Citing *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), the district court also noted that, as a legal matter, "[t]he scope of ERISA preemption is broad and subsumes virtually any state law claim which relates to an employee benefit plan," including those raised by Hutchison. In its October 5, 2005, order, the district court focused on the relationship between the parties. It noted that "[p]laintiffs are beneficiaries of the ESOP plan and their breach of contract claim is against the employer—both traditional plan entities." Finally, the district court concluded that this court's holding in *PONI* required ERISA preemption only in cases of claims against a nonfiduciary third party. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir.2005) (*PONI*). The district court held that ERISA preempted because Fifth Third, unlike the third party in PONI, was a fiduciary.[5]

On October 25, 2006, Hutchison filed his notice of appeal, challenging all four district court orders.[6] On appeal, the parties fundamentally disagree over the nature of the Affiliation Agreement. Hutchison argues that Fifth Third's obligations arose before class members and Fifth Third had a fiduciary-beneficiary relationship and that Fifth Third's actions induced class members to vote in favor of the merger. As a result, Hutchison argues, ERISA does not preempt the breach of contract claim. Fifth Third, on the other hand, describes the nature of the Affiliation Agreement differently. Fifth Third argues that class members could have challenged Fifth Third's Plan Amendment under ERISA and that its legal duty arose under the ESOP. As a result, Fifth Third argues that ERISA preempts Hutchison's claims.

■ Affirmance is required because plaintiffs seek damages for the ERISA-regulated actions of an ERISA fiduciary, based on an alleged contract that the fiduciary entered into before it became a fiduciary with respect to plaintiffs. ERISA preempts in that situation because the state-law contract claim would bind fiduciaries to particular choices, thereby func-

---

5. Because it held that ERISA preempted Hutchison's state law claims, the district court did not analyze Hutchison's state-law breach of contract claim. The district court did rule that, as a matter of ERISA law, Fifth Third did not "transfer" ESOP funds by adding and removing employees. To reach this conclusion, the district court assumed for the purposes of dismissing the remaining ERISA claim at the summary judgment stage that the Affiliation Agreement became part of the plan.

6. In his briefs, Hutchison only challenges the dismissal of the state-law breach of contract claim and does not argue that the district court improperly dismissed the claims of intentional misrepresentation, negligent misrepresentation, conversion, unjust enrichment, and breach of covenant of good faith and fair dealing. Similarly, although the notice of appeal includes a challenge to the October 7, 2005, order, Hutchison does not argue on appeal that the district court improperly dismissed the ERISA claim. Rather, Hutchison argues that the district court, in its application of ERISA law, misinterpreted a key provision of the Affiliation Agreement, and that, to the extent that this interpretation is relevant to the class's state-law claims, this court should overturn the district court's order. Because ERISA preempts Hutchison's breach of contract claim, we do not reach the merits of his interpretation of the Affiliation Agreement.

tioning as a regulation of the ERISA plan. As discussed in further detail below, this conclusion is supported by the Supreme Court's decision in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), and is consistent with case law from this circuit. *See PONI*, 399 F.3d at 698; *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir.2006).

As in *Davila*, ERISA limits plaintiffs' ability to challenge a plan administrator's decision regarding benefits. In *Davila*, plaintiffs relied on a Texas statute that held managed care entities liable for damages "proximately caused" by an entity's failure to "exercise ordinary care when making health care treatment decisions." 542 U.S. at 204, 124 S.Ct. 2488 (quoting Tex. Civ. Prac. & Rem.Code Ann. § 88.002(a) (Vernon 2004 Supp.)). The Supreme Court noted that the duties that the Texas statute imposed "do not arise independently of ERISA or the plan terms." *Id.* at 212, 124 S.Ct. 2488. If a plan administrator decided correctly that a plan did not cover a particular treatment, "the failure of the plan itself to cover the requested treatment would be the proximate cause" of the harm. *Id.* at 213, 124 S.Ct. 2488. Thus, ERISA preempted the state claim because an action exclusively under the control of ERISA law—deciding whether to grant benefits—was a necessary element of the state-law cause of action. In this case, Fifth Third's decision to amend the ERISA plan, making its current employees beneficiaries at the expense of class members, is just as much a subject of ERISA regulations as the benefit determination in *Davila*. Such a determination goes to the heart of what Congress intended ERISA to govern: the rights of beneficiaries under ERISA against plan administrators. Fifth Third's decision to amend the ESOP (a decision clearly "relate[d] to" ERISA, 29 U.S.C. § 1144) constituted an element of Hutchi-

son's state law claim, and no class member could sue Fifth Third before the decision to exclude him or her from the ESOP. There is, therefore, no basis for distinguishing in terms of ERISA preemption the actions that class members challenge here from those plaintiffs challenged in *Davila*.

As in *Davila*, it does not matter whether plaintiffs cite a different body of law to support their cause of action (state tort or contract law versus ERISA fiduciary responsibility) or whether the relief that plaintiffs seek is different from the relief that ERISA affords (damages for personal injury or breach of contract versus plan benefits under ERISA). As long as ERISA exclusively regulates the activity (deciding whether to award benefits), ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated plan benefit determination. Just as the plaintiff in *Davila* sought to use a separate body of law—state tort law—to govern the plan determination at issue there, the plaintiffs in this case seek to use a separate body of law—state contract law—to govern the plan amendments at issue here.

We recognize that there are differences between the claim in this case and the claim in *Davila*. In the present case, but not in *Davila*, some of the elements of the state law cause of action came into existence before there was an ERISA-governed relationship between the fiduciary and the beneficiaries. Here, Fifth Third entered into the contract that is the basis for the state law claim before Fifth Third became the administrator of the ESOP. Nevertheless, a key element of the state law claim—albeit one that arose later— was the ERISA-governed action of Fifth Third in changing the beneficiary scheme. For this reason, the timing of the obli-

gations is a fact insufficient to distinguish this case from *Davila*.

Not permitting extra-ERISA regulation to restrict a fiduciary's ERISA-related decisions (whether the regulation creates obligations before or after the fiduciary's ERISA obligations arise) is consistent with the purposes that Congress had in mind when it passed ERISA. As the Supreme Court noted in *Davila*, "Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sections, and ready access to the Federal courts.'" 542 U.S. at 208, 124 S.Ct. 2488 (quoting 29 U.S.C. § 1001(b)). Congress engaged in a " 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* at 215, 124 S.Ct. 2488 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Those purposes apply just as strongly when the additional regulation under state law arises, in part, from actions preceding the onset of the ERISA-governed relationship between the parties. Allowing Hutchison's state-law claim to proceed could have an impact on this careful balancing because the plan administrator would have to evaluate beneficiaries' state-law claims before making decisions relating to the ERISA plans, and a threat of litigation from beneficiaries might discourage plan administrators from making decisions that are permissible under ERISA. In addition, allowing Hutchison's state-law claim to proceed might discourage the creation of employee benefit plans in the future. Administrators would require specialized knowledge of ERISA provisions *and* various state laws, at an additional cost to employers. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) ("Uniformity is impossible, however, if plans are subject to different legal obligations in different States.").

Moreover, ERISA preemption in this case is fully consistent with our recent cases. In *PONI*, for instance, we held that ERISA did not preclude an employer's state-law breach of contract and negligent misrepresentation claims against a record keeper of employee life insurance policies. 399 F.3d at 692. The employer alleged that the record keeper allowed benefit plans to violate Internal Revenue Service regulations, resulting in the requirement of additional contributions and the imposition of fines on the employer. We held that ERISA did not preempt the breach of contract claim against the record keeper because the record keeper was not a fiduciary under any of the plans at issue in the case. *Id.* at 700. In contrast, Fifth Third is a fiduciary in this case. In addition, we explained that the state-law cause of action did not fall within any of the three recognized categories for which courts generally find ERISA preemption:

> Specifically, PONI's suit against [the record keeper] will not result in mandating a specific employment benefit structure, providing an alternative enforcement mechanism of an ERISA plan, or regulating an ERISA plan itself. Thus, the sole remaining issue is whether the breach of contract claim would implicate "relations among the traditional ERISA plan entities."

*Id.* In resolving the last question, we reasoned that

> PONI's claim against [the record keepers] is not "based on any rights under the plan; there is no allegation that any of the plan's terms have been breached. Nor is there any effort to enforce or modify the terms of the plan." [The

record keeper] was simply a third-party service provider.

*Id.* at 701 (citation omitted). The instant case is of course entirely different. Plaintiffs directly challenge a specific employment benefit structure and seek to regulate an ERISA plan in the sense that the Supreme Court contemplated in *Davila.* Most strikingly, the instant case differs from *PONI* in that plaintiffs' claim implicates relations among traditional ERISA plan entities. Fifth Third is an ERISA plan fiduciary and it is Fifth Third's amendment of the plan that is directly challenged, not just implicated, in this suit.

Preemption in this case is also consistent with our post-*Davila* case law. In *Briscoe,* former employees sued, among others, former officers and directors of a bankrupt employer, alleging violation of fiduciary duties under ERISA and various torts under Kentucky law. 444 F.3d at 498. We held that ERISA preempted the state law claims for fraud, misrepresentation, concealment, and failure to disclose the financial condition of the employee benefit plan. In doing so, we followed *Davila* and also our reasoning in *PONI,* finding that the two cases were fully consistent. *Id.* at 499–500. However, we held that ERISA did not preempt the employees' state-law claim that defendants breached a duty that they owed to employees by failing to disclose the overall financial condition of the corporation. Our reasoning in that case simply does not extend to the instant case, because, as we noted in *Briscoe:*

> with respect to the claim that the [former officers and directors of the company] breached a duty by failing to disclose the overall financial condition of

the Company, ... the plaintiffs could have alleged such a breach of duty even if the Company had never sponsored an ERISA-covered plan.

*Id.* at 500. That is not the case here.

This case is also different from *Briscoe* because class members had an avenue to pursue, and did in fact pursue, a remedy for such wrongs under ERISA. As mentioned above, Hutchison brought an ERISA claim in addition to the class members' state-law claims. The district court dismissed the ERISA claim, and Hutchison does not appeal that decision.[7] ERISA prevents class members from recasting their ERISA claim as a breach of contract claim by simply rephrasing the source of Fifth Third's obligations. *Davila,* 542 U.S. at 214, 124 S.Ct. 2488.

The judgment of the district court is AFFIRMED.

---

**7.** As a result, the appropriateness of the district court's decision to treat the Affiliation Agreement as if it were an ERISA plan amendment for the purposes of deciding the ERISA claim is not before us on appeal. *Cf. Halliburton Co. Benefits Comm. v. Graves,* 463 F.3d 360, 375 (5th Cir.2006).